Brian Hennessy, State Bar No. 226721
BHennessy@perkinscoie.com
PERKINS COIE LLP
101 Jefferson Drive
Menlo Park, California 94025
Telephone: 650.838.4300 / Facsimile: 650.838.4350

James McCullagh, *pro hac vice application to follow*
JMcCullagh@perkinscoie.com
Joseph Cutler, *pro hac vice application to follow*
JCutler@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Plaintiff
    FACEBOOK, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

FACEBOOK, INC., a Delaware
corporation,

                    Plaintiff,

    v.

Jason Swan,

                    Defendant.

Case No. **CV 10- 4711** PVT

**COMPLAINT FOR:**

**1) VIOLATION OF 15 U.S.C. § 7701, *et seq*, CONTROLLING THE ASSAULT OF NON-SOLICITED PORNOGRAPHY AND MARKETING ACT OF 2003 ["CAN-SPAM"];**

**2) VIOLATION OF 18 U.S.C. § 1030, THE COMPUTER FRAUD AND ABUSE ACT;**

**3) FRAUD;**

**4) TORTIOUS INTERFERENCE WITH CONTRACT;**

**5) BREACH OF CONTRACT;**

**6) VIOLATION OF 15 U.S.C. § 1125(c), FEDERAL TRADEMARK DILUTION; AND**

**7) VIOLATION OF 15 U.S.C. § 1125(a); FALSE DESIGNATION OF ORIGIN;**

**[DEMAND FOR JURY TRIAL]**

LEGAL19204578.2

-1-

COMPLAINT
Case No. _____

For its complaint, Facebook, Inc. ("Facebook") alleges as follows:

## I.   INTRODUCTION

1.       Defendant Jason Swan ("Defendant") created deceptive and fake websites and Facebook Pages that advertised the ability to add a "dislike" button to the functionality of Facebook users' experience on Facebook.  Defendant used these websites to lure Facebook users to add, install, and use deceptive Facebook Applications, which were designed to trick unsuspecting Facebook to redirect their computer browsers through a series of unwanted commercial websites that took the users' money and paid Defendant for Internet traffic – all without ever delivering on the original promise to add a "dislike" button to Facebook. Defendant's schemes were calculated to unfairly profit from the fame and enormous popularity of Facebook's social networking platform, services and trademarks.  Defendant defrauded Facebook in that he represented that he would abide by Facebook's terms and guidelines.  Moreover, he purposefully designed his schemes to prey off the inherent trust that exists between friends on Facebook's social network.  The result was an almost immediate and viral spreading of his scheme that wreaked havoc throughout a significant portion of Facebook's user base, tarnished Facebook's brand, damaged its goodwill and required it to expend significant efforts to educate its users, respond to their concerns and identify and weed out Defendant's fake profiles, applications and Pages.  Facebook brings this lawsuit to stop Defendant's fraudulent and abusive use of its services and to recover compensatory, statutory, aggravated and punitive damages, disgorgement of the proceeds of Defendant's scheme and its reasonable costs and attorneys' fees associated with this lawsuit.

## II.   PARTIES

2.       Plaintiff Facebook is a Delaware corporation with its principal place of business in Palo Alto, California.

3.       On information and belief, Defendant Jason Swan is a resident of Las Vegas, Nevada.

COMPLAINT
Case No. _____

### III.   JURISDICTION AND VENUE

4.      This Court has federal question jurisdiction of this action under 28 U.S.C. § 1331 because the action alleges violations of the Lanham Act (15 U.S.C. §§ 1125(a) and (c)), the CAN-SPAM Act of 2003 (15 U.S.C. § 7701 *et seq.*) and the Computer Fraud and Abuse Act (18 U.S.C. § 1030). This Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

5.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims raised in this lawsuit occurred in this district and because Defendant agreed to comply with Facebook's Statement of Rights and Responsibilities and incorporated policies, guidelines and terms (collectively "Statement"), which provides that any dispute arising out of or related to the Statement shall be resolved by a court located in Santa Clara County.

6.      During all relevant times, Defendant repeatedly, knowingly and intentionally accessed or permitted access to Facebook servers located in California in furtherance of his deceptive and fraudulent marketing scheme and to induce users to unknowingly send spam to their Facebook friends. In the course of his conduct, Defendant had systematic and continuous contacts with California and targeted his wrongful acts at Facebook.

7.      Defendant agreed to comply with the Statement and thereby has agreed to submit to the personal jurisdiction of the courts located in Santa Clara County, California for the purpose of litigating these claims.

### IV.   INTRADISTRICT ASSIGNMENT

8.      Assignment to the San Jose Division of this Court is appropriate under Civil L.R. 3-2 because the claims asserted herein arose in the county of Santa Clara. Facebook is headquartered in the county of Santa Clara and has servers located at several locations in this county. Assignment to the San Jose Division of this Court is also appropriate because the parties have agreed that all claims between them would be resolved in Santa Clara County.

## V.     FACTS AND BACKGROUND

**A.     Facebook Background and Service**

9.     Founded in February 2004, Facebook is a "social utility"—a network that helps people communicate more efficiently and effectively with their friends, family and co-workers. The company develops and provides online networking services that facilitate the sharing of information through the "social graph"—the digital mapping of people's real world social connections.  Through Facebook's website, the Facebook Platform, Social Plugins and other tools, hundreds of millions of Facebook users enjoy personalized and relevant Internet experiences.  As of the filing of this Complaint, more than 500 million active Facebook users spend more than 700 billion minutes per month on http://www.facebook.com, making the website the second most trafficked website in the United States.  More than 150 million Facebook users also engage with Facebook through external, third-party websites every month, and more than one million websites have implemented tools made available by Facebook that engage users and make their websites more social and relevant.  Through Facebook, users can interact with over 900 million objects (individual and community pages, groups and events) and 30 billion pieces of content (web links, news stories, blog posts, notes, photo albums, etc.).

10.     One of the defining features of Facebook is that users are required to use their real identities.  Facebook users rely on the fact that users are required to use their actual identities such that they trust the authenticity of the communications coming from their Facebook friends.

11.     In order to access Facebook information and features available to Facebook users, a person must sign up for Facebook using his or her real name, select a unique password and agree to the terms and conditions contained in Facebook's Statement before being granted authorization to access the protected information areas of Facebook.

12.     Once a user obtains a Facebook account, the user obtains a "profile" that may be populated with information about the user such as where he or she lives, his or her interests, biography, current and past education and work history.  Facebook users may connect their profiles to the profiles of other persons that they "friend" on Facebook.  A Facebook friendship is mutual.  Both users must agree to be friends before a friend connection is established.

13.    Business or other commercial, political or charitable organizations can create "Pages" that allow them to establish a presence on Facebook.  Facebook users can also connect their "profiles" to "Pages."  The administrator of the Page must be an authorized representative of the subject of the Page.

14.    Facebook users may connect their profiles to Facebook Pages by clicking on the "Like" button that is located at the top of each Page.  Clicking on the "Like" button connects the Page to the user's profile.  A link to the Page is displayed on the users' profile in a list under the category "Likes," and the user's name and profile picture appear on the Page's list of "Friends" or "People" that Like the Page.

15.    Once a Facebook user connects his or her profile to his or her friends' profiles and desired commercial Pages, Facebook facilitates and enables connected profiles and Pages to communicate with each other.  Secure communication among Facebook users is vital to the integrity of Facebook's computer network as well as to the level of confidence that Facebook users have in using Facebook.

16.    Facebook users may only be contacted by other registered Facebook users or by Facebook itself.

17.    Each user profile and each Facebook Page has a "Wall," which is an area where registered users with access to the profile or Page may post content, including messages, links, pictures and videos.  Each profile and Facebook Page prominently displays the "Facebook" trademark, referenced in paragraph 27 of this complaint in the upper left-hand corner of the webpage.  The wall functions as a virtual bulletin board where recent posts are arranged chronologically with the most recent post appearing on the top.

18.    In addition to the user profile, which contains the "Wall," Facebook provides each Facebook user with a "News Feed" or "home" page, which is the first page shown to Facebook users when they log into their Facebook accounts.  Like profiles and Pages, the News Feed prominently displays the "Facebook" trademark, referenced in paragraph 27 of this complaint in the upper left-hand corner of the webpage.  The News Feed displays, among other things, activities performed by each of the user's friends and Facebook Pages to which the user has

connected his or her profile.  For example, a user's News Feed on a given day could include updates posted by the user's friends or Pages to which the user has connected, notices that friends became friends with other Facebook users, that a particular friend connected a Facebook Page to his or her profile, that new content was added to a Facebook Page's Wall, or that a link, photo or video was posted on a profile or Page Wall.  The activities that appear on the News Feed are arranged chronologically with the most recent events posted at the top of the feed.  This feature enables users to instantly view the activities occurring on the various profiles and Pages to which they are connected without visiting each and every profile or Page.

19.     A registered user may share a Facebook Page by clicking on the "Share" button on the Page.  Clicking on this button brings up a window where the user can type a short note and then publish the note, a link to the Page and the picture icon of the Page to his or her Wall, which will then appear automatically in the newsfeeds of all of that user's friends.  This function enables users to share a link to the Page with a large number of users with minimal effort.  Using the "Share" button often causes the user's friends to view the shared Facebook Page.

20.     For more targeted sharing, registered users may also suggest a Facebook Page to particular friends by clicking on the "Suggest to Friends" button.  When a user clicks on the "Suggest to Friends" button, a message containing a link, icon, short description and an optional message is sent to selected friends inviting them to connect to the Page.  A Page suggestion often causes the recipients of the message to view the suggested Facebook Page to determine whether the user would like to connect to the Page.  Provided the sending user's privacy settings are not adjusted to prohibit it, the fact that a user suggested a Page is published to the user's Wall and also to the News Feeds of that person's friends.

21.     The vast majority of Facebook applications are built by third parties on Facebook's platform, and have corresponding Facebook Pages where users learn about the application, read the application's wall, and click on links that connect the applications to their individual user profiles.  In order to run an application on Facebook, developers must first register their Facebook application.

LEGAL19204578.2                                    -6-                          COMPLAINT
                                                                                Case No. _____

22.     Once an application is created, the developer can integrate the application with Facebook communication channels to help increase the number of people who connect to and use the application. These channels include publishing a notice that the application was added on the user's Wall, users can bookmark the application's Page and "like" the Page, the application itself can also send requests and add tabs on the user's profile that contains details and information about the application. The application can also prompt users to publish "Stories" about what they are doing in the application. The published stories will then appear on the individual user's Wall and in all of his or her friends' News Feeds.

23.     When Facebook users add an application, the developer of the application has access to information in the user's profile, which may include the user's email address, friends list, and messaging options. Facebook requires that application developers post a privacy policy that explains what data the developer will collect, and how the developer will use, store and/or transfer the user's information. Developers must obtain explicit consent from the user who provided the data before using it for any purpose other than displaying it back to the user on the application's page. Developers cannot prompt new users to send invitations immediately after they connect with the developer's application and a user's friends' data can only be used in the context of the user's experience on the developer's application, not to market the application to the friends.

24.     Applications may be used for advertising, but may not be used to post the developer's content on the user's behalf. Applications' advertisements must not include or be paired with any other communications channels, including Wall posts, messages, News Feed publications, or social plug-ins such as the Like button, without Facebook's written permission.

25.     Facebook provides its users with tools that allow the customization of the ability to share or restrict certain information based on specific friends or friend lists on Facebook's network as well as the ability to have certain Facebook communications delivered to them by other messaging options, such as email.

26.     Facebook devotes significant resources to combat unauthorized use of its website and service. In addition to Facebook employees that continuously work to monitor and improve

COMPLAINT
Case No. _____

1   Facebook security, Facebook also provides users with tools that help them ensure that their

2   accounts are not used by others.

3   **B.     Facebook's Trademarks Are Famous**

4          27.     Facebook is the owner of the entire right, title and interest in and to a number of

5   trademarks and service marks, including the following, for which Facebook owns federal

6   applications or registrations covering a wide variety of goods and services:

7

8          ▪   **FACEBOOK**  Registrations:  Reg. No. 3801147 (first use for Classes 38, 41, and 42

9               February 28, 2004, first use for Class 9 August 31, 2006)

10

11         ▪     Applications:  Serial Numbers  77896325 and 77896323,

12

13         ▪     Application:  Serial Number, 77273570 (intent-to-use)

14         28.     Attached to this Complaint as Exhibit A are true and correct copies of the United

15   States Patent and Trademark Office printouts of the online status pages for these trademarks.  All

16   of the registrations noted in Exhibit A are valid, subsisting, unrevoked and uncancelled.  These

17   registered trademarks are referred to collectively as the "Facebook Trademarks."

18         29.     Facebook has continuously used the Facebook Trademarks in interstate commerce

19   in the United States since the date listed in paragraph 27, above, in connection with its goods and

20   services.

21         30.     The Facebook Trademarks are highly distinctive with regard to Facebook's online

22   networking services.

23         31.     As a result of Facebook's widespread use of the Facebook Trademarks worldwide,

24   its prolific presence on third party websites, the continuous and unsolicited media coverage of

25   Facebook, the high degree of consumer recognition of the Facebook Trademarks and the strong

26   and loyal base of customers that regularly use and enjoy Facebook's services, the Facebook

27   Trademarks are famous within the meaning of Section 43(c) of the United States Trademark Act,

28   15 U.S.C. §1125(c).

**C.    Facebook Statement of Rights and Responsibilities**

32.    In order to obtain a Facebook account and authorization to access user information maintained by Facebook, users must agree to comply with the requirements set forth in the Statement.  The Statement describes permissible and prohibited uses of Facebook's network, which include measures to protect Facebook users from abuse and to protect users' personal information and other content from unauthorized disclosure.   All of these features help to protect the Facebook brand.

33.    Facebook's Statement includes, among other things, specific terms for Facebook profiles, Pages ("Pages Terms"), advertising ("Advertising Guidelines") and for Facebook application development ("Developer Principles & Policies" or "Developer Terms").

34.    All Facebook users, including Defendant, affirmatively agree to comply with the Statement before Facebook creates an account for them or allows them access to certain features of the Facebook website.  The Statement sets forth acceptable uses of Facebook and prohibits users from conducting certain activities.  A true and correct copy of Facebook's current Statement is attached as Exhibit B.

35.    Facebook's Statement prohibits Facebook users from:

      a.   using Facebook to do anything unlawful, misleading or malicious;

      b.   using Facebook's trademarks without Facebook's written permission;

      c.   sending or otherwise posting unauthorized commercial communications (such as spam) on Facebook;

      d.   collecting users' content or information or otherwise accessing Facebook using automated means without Facebook's permission;

      e.   using Facebook in any unlawful manner or in any other manner that could damage, disable, overburden or impair the Facebook website;

      f.   facilitating and encouraging violations of the Statement; and

      g.   uploading malicious code.

36.    The Statement also addresses the permissible use of Facebook Pages by expressly referencing and incorporating Facebook's Pages Terms, which contain the following restrictions:

a. Pages may only be used to promote a business or other commercial, political or charitable organization or endeavor (including nonprofit organizations, political campaigns, bands and celebrities);

b. Only an authorized representative of the subject of the Page may administer the Page;

c. Pages can only post content and information under the "everyone" setting; and

d. If the Page contains any form of advertising, then Section 11 of the Statement, and also the Advertising Guidelines apply to the Page and its administrator.

37. Facebook's current Pages Terms are attached as Exhibit C.

38. The Statement also includes reference to Facebook's Advertising Guidelines, which apply to all advertisements appearing on Facebook, including advertisements in Facebook Pages.

39. Facebook's Advertising Guidelines include the following restrictions:

a. Advertisers cannot create or manage multiple Facebook accounts for advertising purposes unless given permission by Facebook to do so;

b. Advertisements that contain a URL or domain in the body must link to that same URL or domain;

c. Advertisements must not be false, misleading, fraudulent or deceptive;

d. Advertisements cannot be deceptive or fraudulent about any offer made;

e. Advertisements must clearly represent the company, product or brand that is being advertised;

f. Products or services promoted in the advertisement must be directly available on the landing page;

g. Advertisements must not include unsubstantiated claims, including but not limited to prices, discounts or product availability;

h. If an advertisement includes a price, discount or "free" offer, (1) the destination URL for the ad must link to a page that clearly and accurately offers the exact deal the

COMPLAINT
Case No. _____

advertisement has displayed, and (2) the advertisement must clearly state what action or set of actions is required to qualify for the offer;

        i.      Advertisements may not contain, promote or reference get rich quick and other money making opportunities that offer compensation for little or no investment, including "work from home" opportunities positioned as alternatives to part-time or full-time employment or promises of monetary gain with no strings attached;

        j.      Advertisements cannot contain, facilitate or promote "spam" or other advertising or marketing content that violates applicable laws, regulations or industry standards;

        k.      If obtaining the benefit of the advertisement requires the user to subscribe to a service, the service and offer requirements must both be stated in the advertisement and on the Facebook Page;

        l.      If obtaining the benefit of the advertisement requires a recurring subscription, the benefit to be obtained must be consistent with what is promoted in the advertisement copy;

        m.      With respect to subscription services, the promoted website must clearly and accurately display the price and billing interval on the landing page as well as on any page that prompts a user for personally identifiable information or billing information (including a mobile phone number or credit card number); and

        n.      If the service is a subscription, the website must provide a prominent opt-in checkbox or other clear mechanism indicating that the user knowingly accepts the price and subscription service.

    40.    Facebook's current Advertising Guidelines are attached as Exhibit D.

    41.    All Facebook users that develop Facebook Applications affirmatively agree to comply with the Developer Terms before they are permitted to develop Facebook Applications on the Facebook Development Platform.

    42.    Facebook's Developer Terms contain the following restrictions:

        a.      Developers must not express or imply any affiliation or relationship with or endorsement by Facebook;

COMPLAINT
Case No. _____

b.      Developers may not create content that infringes upon the rights of any third party, including intellectual property rights, privacy, publicity or other personal or proprietary right, or that is deceptive or fraudulent;

c.      Users must always consent to the any newsfeed or wall content that a developer posts on their behalf;

d.      Developers cannot directly or indirectly transfer any data the developer receives from Facebook to any ad network, ad exchange, data broker, or other advertising related toolset, even if a user consents to such transfer or use.  By indirectly, Facebook means that a developer cannot, for example, transfer data to a third party who then transfers the data to an ad network; and

e.      Developers must not include advertisements or promotions, cross-promote other applications, or provide web search functionality in content distributed through Facebook communication channels.

43.      Facebook's current Developer Terms are attached as Exhibit E.

**D.      Defendant's Unauthorized and Fraudulent Activities**

44.      Defendant is a registered Facebook user and during all relevant times has been and is bound by his express agreement to abide by Facebook's Statement, Pages Terms, Advertising Guidelines, and Developer Terms.

45.      Upon information and belief, since at least April, 2009 Defendant has created and administered more than 27 fake Facebook profiles, more than 13 fake Facebook Pages, and at least 7 applications.

46.      Defendant engages in advertising activities on the Facebook website, and through the use of his applications.

47.      At no time has the Defendant received permission from Facebook to conduct any commercial activity on Facebook's website or through his applications that exceeds the authorization provided in the Statement and incorporated guidelines.

48.     Upon information and belief, Defendant is employed as Chief Technical Officer of CPAlead, an affiliate marketing company, and receives payments generated by directing traffic to spam survey websites and providing user information he stole from Facebook

49.     Upon information and belief, Defendant signed up as an "affiliate" with one or more advertising companies that operate affiliate marketing programs.  The advertising company assigns each affiliate with a unique identification number, which is used to track the affiliate responsible for referring user traffic to Internet websites that have contracted with the affiliate advertiser.

50.     Upon information and belief, Defendant used, and continues to use, servers and/or computers under his control to create more than 27 fake profiles, 13 fraudulent and deceptive Facebook Pages and 7 Facebook Applications that violated Facebook's Statement, Pages Terms, Advertising Guidelines and Developer Terms.

51.     Upon information and belief, Defendant also controls and administers webpages located at Internet domains outside of the Facebook Platform or network that are used to either funnel traffic to or receive traffic from his unauthorized and deceptive Facebook Pages and/or applications ("Intermediary pages").

52.     Upon information and belief, these Intermediary pages are used to assign Defendant's affiliate identification number to traffic coming from his deceptive Facebook Pages, applications, and/or webpages so that he will be paid for referring Facebook users to the affiliate advertisers' websites and for providing affiliate advertisers' with Facebook users' information.

53.     For example, one of Defendant's webpages, located at http://dislike-btn.info/video.php was entitled: "Click Here To Get Your DisLike Button!," falsely suggesting that users could obtain a "dislike" button to vote on whether they "liked" or "disliked" certain Facebook Pages by simply completing a "30-second test below to prove you are human."  The Page then listed four "security check" tests Facebook users should take, including "What color is YOUR Heart?"

54.     The dislike-btn.info webpage was intentionally deceptive and fraudulent. Defendant's representations were false, and he knew they were false.

COMPLAINT
Case No. _____

55.    Defendant did not represent Facebook, and Facebook did not then, and does not now, even offer a "dislike button."

56.    Defendant's statements that his page granted access to a Facebook dislike button and that a security check was required to determine if Facebook users "were human" were false and misleading.

57.    Upon information and belief, the "tests" listed in the security test box were actually designed to redirect visitors to Defendant's application, called "Quiz.Me," which requested access to users' profile information, including their friend lists and contact information.

58.    Upon information and belief, once users added the "Quiz.Me" application, they were directed to deceptive surveys that requested the users' name, email and mobile phone numbers.  The survey pages included an "Auto-Fill Form" button that displayed a Facebook trademark "f".

59.    Upon information and belief, when users clicked the "Auto-Fill Form" button, the Defendant's "Quiz.Me" Application copied and pasted the users' information into the scam forms.

60.    Upon information and belief, as users continued to answer the survey questions, they were eventually led to enter their mobile telephone numbers, which was used by Defendant to sign-up the users for premium mobile telephone subscription services the charges for which would then appear on the users' monthly wireless telephone bills.

61.    In addition to tricking Facebook users into providing their personal information on deceptive third-party advertising sites, the "Quiz.Me" application Page, which was located on the Facebook network and included the Facebook Trademarks, deceptively advertised quizzes and surveys that were actually advertisements for goods and services.  For example, one survey purported to tell users "Which 7 Deadly Sin are YOU?", but once users completed the survey, the screenshot stated, "We are generating your results.  Here are some special offers while you wait."

62.    Upon information and belief, Defendant intentionally used these inviting titles to induce Facebook users to try his applications, which then lured users through his deceptive advertising scheme, which caused Facebook users to spend money on goods and services that were not advertised on Defendant's application Page.

COMPLAINT
Case No. _____

63.     Upon information and belief, the Defendant used several different survey sites connected to the same fraudulent "Quiz.Me" application in order to increase the effectiveness of his scams.  The survey names included "What color is YOUR Heart?", "Which 7 Deadly Sin are YOU?", "Are YOU Stressed?", and "Take the IQ Challenge."  Each of these surveys collected Facebook users' personal information and lured them into signing up for a range of goods and services, which cost them money, and which violated Facebook's Advertising Guidelines.  Hundreds of Facebook users provided negative reviews of their experience using Defendant's application and surveys – labeling them a "scam."

64.     Upon information and belief, in order to spread the impact of his scheme as widely as possible on Facebook, Defendant created fake Facebook Profiles and sent unsolicited commercial messages (spam) to Facebook users' friends suggesting that they visit Defendant's Facebook Pages, advertising websites, and application Pages.

65.     Upon information and belief, Defendant also encouraged users to send messages themselves, and provided them with malicious code that automated the sending of spam messages with JavaScript software code.

66.     For example, Defendant created a scam Page that presented JavaScript software code for users to cut and paste into their browsers that was entitled, "Free Alice in Wonderland Pre-Release Tickets."  The Page stated that the tickets were "a limited time promotional offer" and instructed users to "Like" the Page.  It also instructed users to invite all their friends to "Like" of the Page, stating, "If you do not invite ALL of your friends you may not be eligible."  The Page then provided a box entitled, "How to quickly invite all your friends," which contained a JavaScript software code.  Users were instructed to copy the code into their browser address bars and click "go," which would then send spam messages promoting the Defendant's scheme to all of the user's Facebook friends.

67.     Upon information and belief, Defendant also spread the impact of his scheme by using the access granted to him when users added his applications to their profiles to gain access to those users' lists of friends, and then sent links to his advertising webpages to those friends.

68.     Defendant's deceptive advertising campaign violated Facebook's Statement in multiple ways, including unauthorized use of the Facebook Trademarks, unauthorized collection of users' information, accessing Facebook using automated means without Facebook's written permission, and uploading malicious code.

69.     Furthermore, the Defendant violated Facebook's Advertising Guidelines by making deceptive and fraudulent offers regarding a Facebook "dislike button," displaying deceptive survey links, and by failing to disclose in his Facebook advertisements the true nature and requirements of his advertisements – especially that they would require Facebook users to spend money participating in subscription services.

70.     Defendant's campaign also violated Facebook's Developer Terms by misleading users into believing he had an affiliation with Facebook, transferring user data to third parties, providing links to spam promotions through content distributed through Facebook, and streaming Stories without user consent.

**E.     Harm to Facebook**

71.     Defendant's misleading and deceptive advertising scheme has tainted the Facebook experience for the affected Facebook users and caused many of them real economic loss in the form of undisclosed subscription fees.

72.     Facebook has suffered and continues to suffer significant harm to its reputation and goodwill due to Defendant's actions.  Facebook has suffered more than $5,000 in economic damages attributable to its efforts and resources used to combat Defendant's fraudulent application, to combat Defendant's unauthorized access to Facebook accounts and servers, to respond to user complaints and provide assistance in preventing Defendant from continued unauthorized use of Facebook's services, and to identify and locate Defendant.

73.     Upon information and belief, Defendant has engaged, willfully and maliciously, in unauthorized access to and misappropriation of Facebook computers, servers, systems, networks and data, including network information, and Facebook user information.

-16-

COMPLAINT
Case No. _____

74.     Upon information and belief, Defendant has used automated means to initiate and send, willfully and maliciously, unsolicited commercial messages in order to defraud Facebook users and profit from his illegal and improper spamming and advertising campaigns.

75.     Defendant has been unjustly enriched by his activities at the expense of Facebook and its users.

## VI.     CLAIMS FOR RELIEF

**FIRST CAUSE OF ACTION – VIOLATION OF CONTROLLING THE ASSAULT OF NON-SOLICITED PORNOGRAPHY AND MARKETING ACT OF 2003 ("CAN-SPAM"),**
**15 U.S.C. § 7701, *et seq.***

76.     Plaintiff Facebook realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1 through 75.

77.     Facebook is an Internet access service as defined in 15 U.S.C. § 7702(11) because it provides a service that enables users to access content, information, electronic mail or other services offered over the Internet and may also include access to proprietary content, information and other services as part of a package to consumers.

78.     Facebook's website and computers operate in interstate and foreign commerce and communication and are therefore protected computers under 15 U.S.C. § 7702(13).

79.     Upon information and belief, Defendant induced, and continues to induce, Facebook users to utilize automated scripts that caused commercial electronic messages to be sent to all of their friends on Facebook.  The electronic messages initiated by Defendant were "commercial" electronic messages because their primary purpose was the commercial advertisement or promotion of a commercial product or service (including content on an Internet website operated for a commercial purpose) as provided in 15 U.S.C. § 7702(2)(A).

80.     Defendant intentionally misled Facebook users by initiating the transmission of commercial electronic messages through Facebook's computers to Facebook users that contain header information that is materially false or misleading as to the true identity of the senders of the messages in violation of 15 U.S.C. § 7704(a)(1).

COMPLAINT
Case No. _____

1    81.    Defendant initiated the transmission of commercial electronic messages, in a

2    pattern or practice, through Facebook's computers to Facebook users that do not contain a

3    functioning return electronic mail address or other Internet-based opt-out mechanism in violation

4    of 15 U.S.C. § 7704(a)(3).

5    82.    Defendant initiated the transmission of commercial electronic messages, in a

6    pattern or practice, through Facebook's computers to Facebook users that do not contain clear and

7    conspicuous identification that the messages are advertisements or solicitations, clear and

8    conspicuous notice of the opportunity to decline to receive further commercial emails from the

9    sender or a valid physical postal address of the sender in violation of 15 U.S.C. § 7704(a)(5).

10    83.    Defendant initiated the transmission of commercial electronic messages, in a

11    pattern or practice, through Facebook's computers to Facebook users that contain subject

12    headings that are misleading regarding the contents or subject matter of the message and

13    misleading regarding Facebook's connection to the messages in violation of 15 U.S.C.

14    § 7704(a)(2).

15    84.    Upon information and belief, Defendant initiated the transmission of the

16    misleading commercial electronic messages with actual knowledge or knowledge fairly implied

17    on the basis of objective circumstances that the messages' subject heading is likely to mislead a

18    recipient acting reasonably under the circumstances.

19    85.    Upon information and belief, Defendant initiated the transmission of commercial

20    electronic messages, in a pattern or practice, through Facebook's computers to Facebook users,

21    that are misleading and unlawful under 15 U.S.C. § 7704(a), as alleged above, or assisted in the

22    origination of such messages through the provision or selection of addresses to which the

23    messages are transmitted as defined in 15 U.S.C. § 7704(b)(1).

24    86.    Defendant caused Facebook harm by causing higher-bandwidth utilization, by

25    causing Facebook to expend significant employee time and sums of money combating the

26    Defendant's spam and responding to user complaints, by deterring users and potential users from

27    using Facebook, by damaging Facebook's goodwill and reputation with its customers; and by

28    causing other injuries to Facebook.

87.     Facebook is entitled to the greater of its actual monetary loss or statutory damages as provided by 15 U.S.C. § 7706(g)(1)(B), in an amount to be proven at trial.

88.     Facebook is entitled to an award of aggravated damages in an amount equal to three times the amount otherwise available pursuant to 15 U.S.C. § 7706(g)(3)(C) because Defendant violated CAN-SPAM willfully and knowingly and because Defendant's unlawful activity included one or more of the aggravated violations set forth in 15 U.S.C. § 7704(b).

89.     Facebook is entitled to reasonable costs, including reasonable attorneys' fees as provided by 15 U.S.C. § 7706(g)(4).

**SECOND CAUSE OF ACTION – COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C.**

**§ 1030, *et seq.***

90.     Plaintiff Facebook realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1 through 89.

91.     Facebook's computers are involved in interstate and foreign commerce and communication and are protected computers under 18 U.S.C. § 1030(e)(2).

92.     Upon information and belief, Defendant knowingly and with intent to defraud accessed Facebook's computers without authorization or in excess of authorization as defined by Facebook's Statement, Facebook's Pages Terms, Advertising Guidelines and Developer Terms, and by means of such conduct, furthered his intended fraud and obtained payment from affiliate marketers in violation of 18 U.S.C. § 1030(a)(4).

93.     Defendant's conduct caused a loss to Facebook during a one-year period in excess of $5,000.

94.     Defendant's conduct has also caused irreparable and incalculable harm and injuries to Facebook and, unless enjoined, will cause further irreparable and incalculable injury for which Facebook has no adequate remedy at law.

95.     Facebook has been damaged by Defendant's actions, including by being forced to expend resources to investigate and prevent the unauthorized access and abuse of its computer network.  Facebook seeks compensatory and other equitable relief under 18 U.S.C. § 1030(g) in an amount to be proven at trial.

## THIRD CAUSE OF ACTION – FRAUD

96.    Plaintiff Facebook realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1 through 95.

97.    At least since April 2008, and possibly earlier, Defendant intended to and in fact did defraud Facebook.

98.    Defendant represented to Facebook and its users that the accounts for which he registered where for actual people and that the Facebook Pages he developed contained content related to the subject of the Page and that they complied with Facebook's Statement, Pages Terms and Advertising Guidelines.

99.    Defendant also represented to Facebook and its users that his applications complied with Facebook's Developer Terms.

100.    These representations were in fact false.  Defendant created Facebook accounts for pseudonyms and other fake accounts.  He created Facebook Pages advertising products or services that were not in fact delivered or even available.  Defendant also created applications that led users to deceptive advertising sites in direct violation of Facebook's Developer Terms.

101.    Defendant knew that he was creating Facebook accounts for persons that did not in fact exist, that he was creating Facebook Pages that did not accurately indicate the nature of the content on the Page, that he was using the Facebook Trademarks in a manner that they were not intended to be used, and that he was creating applications that violated Facebook's Developer Terms.

102.    The Defendant made the representations with the intent to defraud and induce Facebook into permitting him to use its platform and services and to defraud and induce Facebook users to visit the sites that paid him for their traffic.

103.    At the time Facebook hosted Defendant's profiles and Pages on its platform, it did not know that Defendant's representations were false but instead reasonably relied on Defendant's representations that his use complied with Facebook's Statement and Developer Terms.  At the time Facebook users clicked on the links, the users did not know that the Defendant's representations were false and believed they were true.

104. Facebook and its users acted in justifiable reliance upon the truth of the Defendant's representations.

105. Defendant concealed or suppressed material facts by telling Facebook that he was complying with Facebook's Statement and Developer Terms and by making statements on to Facebook users on his websites, applications, and Facebook Pages that promised free goods and services that were different than those which he actually provided, and that in some cases he had no intention of providing the goods or services advertised at all.

106. In justifiable reliance upon Defendant's conduct, Facebook allowed Defendant to advertise on Facebook, and Facebook users were induced to leave the Facebook network to visit third-party commercial websites and unknowingly perpetuate the Defendant's scheme.

107. Because of Facebook's and Facebook users' reliance upon Defendant's conduct, Facebook has suffered and continues to suffer significant harm to its reputation and goodwill. Facebook has already suffered significant economic damages attributable to the effort and resources used to combat Defendants' scam, to combat Defendants' unauthorized access to Facebook accounts and servers, to locate and communicate with the Defendant and to initiate this lawsuit.

108. Facebook is entitled to injunctive relief, compensatory damages and punitive damages in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION – TORTIOUS INTERFERENCE WITH CONTRACT**

109. Plaintiff Facebook realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1 through 108.

110. Use of Facebook's site and services is governed by and subject to Facebook's Statement.

111. At all times relevant to this dispute, users of Facebook's site and services have been required to agree to Facebook's Statement in order to access Facebook's site and services.

112. Defendant affirmatively accepted and agreed to Facebook's Statement and knew or should have known that all Facebook users were required to accept and agree to Facebook's Statement in order to access Facebook's site and services.

113.    Facebook's Statement prohibits users of Facebook from sending or otherwise posting unauthorized commercial communications (such as spam) on Facebook, from misleading Facebook users and from violating Facebook's Advertising Guidelines.

114.    Defendant intended to induce users to breach Facebook's Statement by inducing thousands of them to utilize an automated script that sent spam to their friends.

115.    When Facebook users utilized Defendant's automated script to send spam to their friends, they breached Facebook's Statement.

116.    As a result of this breach, hundreds of thousands of Facebook users received unwanted commercial communications from their friends that they otherwise would not have received.

117.    The breaches induced by Defendant directly and proximately harmed Facebook. Facebook has suffered and continues to suffer significant harm to its reputation and goodwill.

118.    Facebook is entitled to injunctive relief, compensatory damages and punitive damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION – BREACH OF CONTRACT

119.    Plaintiff Facebook realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1 through 118.

120.    Use of Facebook's site and services, the creation of Facebook Pages on the Facebook network and the placement of advertisements on Facebook Pages are governed by and subject to Facebook's Statement, Pages Terms and Advertising Guidelines.

121.    At all times relevant to this dispute, users of Facebook's site and services have been required to agree to Facebook's Statement in order to access Facebook's site and services, create Facebook Pages on the Facebook network and place advertisements on Facebook Pages.

122.    At all times relevant to this dispute, users of Facebook's site and services have been required to agree to Facebook's Developer Terms in order to create and deploy Facebook Applications on Facebook's Developer Platform.

123.    Defendant affirmatively accepted and agreed to Facebook's Statement and to Facebook's Developer Terms.

124.   Facebook's Statement and Developer Terms are binding on Defendant.

125.   Facebook has performed all conditions, covenants and promises required of it in accordance with its Statement and its Developer Terms.

126.   Defendant, through his actions as described above, knowingly, willfully, repeatedly and systematically breached Facebook's Statement, Pages Terms, Advertising Guidelines, and Developer Terms through his conduct as alleged in this Complaint.

127.   Upon information and belief, Defendant's breaches include, but are not limited to, initiation of spam messages, using automated scripts on Facebook's network, confusing, misleading, surprising and defrauding Facebook users, placing advertisements on Facebook that contain URLs that do not end at that same landing page, placing false, misleading, fraudulent and deceptive advertisements on Facebook and offering recurring subscriptions without permission or proper notice.

128.   Defendant's breaches of Facebook's Statement, Pages Terms, Advertising Guidelines, and Developer Terms directly and proximately caused and continue to cause Facebook irreparable and incalculable harm and injury.

129.   Facebook is entitled to injunctive relief, compensatory damages and punitive damages in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION – FEDERAL TRADEMARK DILUTION – 15 U.S.C. § 1125(c)**

130.   Plaintiff Facebook realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1 through 128.

131.   As a result of the enormous publicity afforded the Facebook Trademarks and the strong and loyal base of customers that enjoy Facebook's services, the Facebook Trademarks have a high degree of consumer recognition, are widely recognized by the general consuming public of the United States as a designation of Facebook's goods and services and are famous.

132.   The Facebook Trademarks became famous before Defendant began his infringing activities.

133.    Defendant uses and causes to be displayed the Facebook Trademarks in the course of his unauthorized activities.  Defendant's unauthorized use of the Facebook Trademarks causes dilution by tarnishing the distinctive quality of the Facebook Trademarks when Facebook users associate the negative experience of participating in Defendant's deceptive Facebook Pages scheme with the goods and services normally offered by Facebook under those same marks.

134.    Facebook is informed and believes and, based thereon, alleges that Defendant intends to create an association with the Facebook Trademarks and to trade on the widespread recognition of the Facebook Trademarks.

135.    Defendant's unauthorized use of the Facebook Trademarks was achieved with notice and full knowledge that such use was not authorized or licensed by Facebook.

136.    Defendant's unauthorized use of the Facebook Trademarks was in direct violation of Facebook's Statement, Pages Terms, Advertising Guidelines, and Developer Terms.

137.    Defendant's aforesaid acts are in knowing and willful violation of Facebook's rights under section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

138.    The distinctive nature of the Facebook Trademarks is of enormous value, and Facebook is suffering and will continue to suffer irreparable harm if Defendant's wrongful conduct is allowed to continue.

139.    Facebook is entitled to injunctive relief against Defendant, as well as all other remedies available under the Lanham Act, including, but not limited to, damages in an amount to be proven at trial consisting of, among other things, disgorgement of Defendants' profits, diminution in the value of the goodwill associated with the Facebook Trademarks, and costs and attorneys' fees.

140.    Defendant's conduct has caused irreparable and incalculable harm and injuries to Facebook and, unless enjoined, will cause further irreparable and incalculable injury for which Facebook has no adequate remedy at law.

141.    Defendant's wrongful use of the Facebook Trademarks is deliberate, willful, fraudulent and without any extenuating circumstances and constitutes a willful intent to trade on Facebook's reputation or to cause dilution of the famous Facebook Trademarks.  It is an

1    exceptional case within the meaning of Lanham Act § 35, 15 U.S.C. § 1117. Facebook is

2    therefore entitled to recover three times the amount of its actual damages, attorneys' fees and

3    costs incurred in this action and prejudgment interest.

4    **SEVENTH CAUSE OF ACTION – FALSE DESIGNATION OF ORIGIN, 15 U.S.C.**
     **§ 1125(a)**

5    142.    Plaintiff Facebook realleges and incorporates by reference, as if fully set forth

6    herein, the allegations in paragraphs 1 through 141.

7    143.    In connection with Defendant's services, Defendant has used in commerce, without

8    Facebook's authorization or consent, the Facebook Trademarks.

9    144.    Defendant's unauthorized use of the Facebook Trademarks is likely to cause

10   confusion, mistake or deception among the consuming public regarding the affiliation, connection

11   or association of Defendant with Facebook.

12   145.    Defendant's unauthorized use of the Facebook Trademarks is likely to cause

13   confusion, mistake or deception among the consuming public that Facebook has authorized,

14   approved or in some way sponsored Defendant's services.

15   146.    Defendant's unauthorized use of the Facebook Trademarks constitutes the use of a

16   false designation of origin and false description or representation of fact, all in violation of 15

17   U.S.C. § 1125(a).

18   147.    Plaintiff is entitled to injunctive relief against Defendant, as well as all other

19   remedies available under the Lanham Act, including, but not limited to, damages in an amount to

20   be proven at trial consisting of, among other things, disgorgement of Defendant's profits, and

21   diminution in the value of the goodwill associated with the Facebook Trademarks, and costs and

22   attorney's fees.

23   148.    Defendant's conduct has also caused irreparable and incalculable harm and injuries

24   to Facebook and, unless enjoined, will cause further irreparable and incalculable injury for which

25   Facebook has no adequate remedy at law.

26   149.    Defendant's wrongful use of the Facebook Trademarks is deliberate, willful,

27   fraudulent and without any extenuating circumstances and constitutes a willful intent to trade on

28

Facebook's reputation or to cause dilution of the famous Facebook Trademarks.  It is an

exceptional case within the meaning of Lanham Act § 35, 15 U.S.C. § 1117.  Facebook is

therefore entitled to recover three times the amount of its actual damages, attorneys' fees and

costs incurred in this action and prejudgment interest.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Facebook prays for the following relief:

A.  For injunctive relief, as follows:  A preliminary and permanent injunction enjoining and restraining Defendant from:

    1.  accessing or attempting to access Facebook's website, services and computer systems;

    2.  engaging in any unlawful, misleading or malicious activities directed at or relating to the Facebook network or Facebook users;

    3.  developing any Facebook Applications, or applications that run on Facebook's Development Platform;

    4.  initiating unsolicited commercial electronic mail messages to Facebook accounts;

    5.  procuring unsolicited commercial electronic mail messages to Facebook accounts;

    6.  engaging in any activity that disrupts, diminishes the quality of, interferes with the performance of or impairs the functionality of Facebook's site or services;

    7.  engaging in any further infringing or diluting acts against the Facebook Trademarks; and

    8.  engaging in any activity that violates Facebook's Statement.

B.  An order requiring Defendant to account for, hold in constructive trust, pay over to Facebook and otherwise disgorge all profits derived by Defendant from his unlawful conduct and unjust enrichment, as permitted by law;

C.    An award to Facebook of damages, including but not limited to, compensatory, statutory, aggravate, and punitive damages, as permitted by law and in such amounts to be proven at trial;

D.    An award to Facebook of reasonable costs, including reasonable attorneys' fees;

E.    For pre- and post-judgment interest as allowed by law; and

F.    For such other relief as this Court may deem just and proper.

DATED: October 19, 2010                          **PERKINS COIE** LLP

By: _____

Attorneys for Plaintiff
FACEBOOK, INC.

1

## JURY DEMAND

2      Pursuant to Federal Rule of Civil Procedure 38(b), plaintiff demands a trial by jury as to

3  all issues so triable in this action.

4

5  DATED:  October 19, 2010          **PERKINS COIE** LLP

6                                    By: _____

7

8                                    Attorneys for Plaintiff
                                     FACEBOOK, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28